# United States District Court

NORTHERN DISTRICT OF GEORGIA

ISSUED AND DELIVERED TO U.S. MARSHAL
BY: _____ 7/16/13
DEPUTY CLERK

UNITED STATES OF AMERICA

v.

DARRELL MATHIS

FILED IN CHAMBERS
U.S.D.C. Atlanta
SEP 16 2013
JAMES N. HATTEN, Clerk
By: ____

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:13-MJ-1341
**UNDER SEAL**

ORIGINAL

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about August 8, 2013, within the Northern District of Georgia, defendant DARRELL MATHIS did,

(1) On or about August 8, 2013, in the Northern District of Georgia, did knowingly possess with intent to distribute and distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21 United States Code, Section 841(a)(1) and (b)(1)(D); and

(2) On or about August 8, 2013, in the Northern District of Georgia, did knowingly use and carry a firearm during and in relation to a drug trafficking offense for which they may be prosecuted in a court of the United States, that is, possession with intent to distribute and distribution of a controlled substance, all in violation of Title 18, United States Code, Section 924(c).

I further state that I am a Special Agent of the Federal Bureau of Investigation and that this complaint is based on the following facts:
See attached affidavit.

Continued on the attached sheet and made a part hereof.    (X) Yes    ( ) No

_____
Signature of Complainant
Brian Davis, FBI SA

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

September 16, 2013                                    at    Atlanta, Georgia
Date                                                        City and State

Russell G. Vineyard
United States Magistrate Judge                              _____
Name and Title of Judicial Officer                          Signature of Judicial Officer

# Affidavit

I, Brian Davis, being duly sworn, depose and state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for 11 years. I am currently assigned to the Atlanta, Georgia, office and I investigate Public Corruption and Civil Rights offenses. Prior to being hired by the FBI, I was a police officer for eight years in Gaston County, North Carolina, where I worked as a Detective in the Vice Narcotics Unit for five years.

2. This affidavit is offered in support of a complaint charging DARRELL MATHIS (MATHIS) for the offenses of Possession with Intent to Distribute and Distribution of Marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(D), and Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c) on August 8, 2013.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The information set forth in this affidavit is based upon my experience, training, personal knowledge, observations, and consultations with other law enforcement investigators and agents, and other sources of information related to this investigation.

**Probable Cause**

4. Darrell MATHIS is currently employed as a sworn deputy with the Newton County Sheriff's Office (NCSCO), where he works as a patrol officer. MATHIS has been so employed since December 2008.

1

5. This investigation began in April 2013, when two law enforcement officers reported to the FBI that a Confidential Source ("CS"), who knows MATHIS, had reported to them that the CS had been inside of MATHIS's apartment in Lithonia, Georgia, and had observed a large amount of marijuana. The CS was at MATHIS's apartment on a social visit and observed several large bags of what the CS believed to be marijuana on MATHIS's living room table. MATHIS told the CS during that visit that he sells marijuana, and stated that he does not worry about the police pulling him over because he drives safely and flashes his police credentials to get out of tickets if he is stopped.

6. The CS was then contacted directly by your affiant and other FBI agents and confirmed the information stated above in paragraph 5. The CS further stated that MATHIS always has a lot of money and never works any off-duty jobs to the CS's knowledge. The CS indicated that he/she was willing to assist the FBI in an investigation of MATHIS.

7. On April 25, 2013, shortly after midnight, the CS met with MATHIS. This meeting was audio recorded. During the meeting, the CS told MATHIS that he/she wanted to purchase an ounce of marijuana from MATHIS for a friend. MATHIS agreed to sell the marijuana as soon as the friend had money available. While discussing the purchase of the marijuana, the CS asked MATHIS how much was "the bag that you had at your house," to which MATHIS responded that it was one pound.[1] The CS and MATHIS also discuss different types of marijuana and different methods used to package marijuana for distribution.

8. On April 25, 2013, at approximately 4:48 p.m., the CS met in person with MATHIS. The CS told MATHIS that he/she was purchasing marijuana for a friend. MATHIS arrived in

---

[1] The audio recordings have not yet been transcribed. All quotes herein are based on my review of the recordings, and are based on my best understanding of the words used.

2

his marked patrol car. He exited his patrol car wearing his NCSO uniform and firearm. During this meeting, MATHIS provided the CS with approximately one ounce of marijuana, and the CS paid MATHIS $100. MATHIS told the CS to tell the CS's friend that he "did her right, I gave her a little extra." This meeting was recorded with both video and audio recordings.

9. On May 6, 2013, the CS again met with MATHIS at a restaurant in Lithonia, Georgia. The CS bought approximately one ounce of marijuana from MATHIS for $100. The conversation between the CS and MATHIS was recorded. During this meeting, the CS also introduced an undercover FBI agent ("UC #1") to MATHIS.

10. On May 17, 2013, the CS met with MATHIS. MATHIS was in his NCSO patrol car and wearing his uniform. The CS purchased approximately one quarter-pound of marijuana for $300.00 from MATHIS. During this transaction, MATHIS was wearing his firearm and carrying a black plastic bag containing marijuana. MATHIS dropped the bag inside of the CS's car and accepted $300.00 from the CS. The meeting was photographed, video and audio recorded.

11. On May 23, 2013, UC #1, acting in an undercover capacity, accompanied by the CS, traveled to a store in Lithonia, Georgia to meet with MATHIS. Prior to the meeting, UC #1 had spoken with MATHIS on the telephone and agreed to purchase one quarter-pound of marijuana from MATHIS. UC #1 met with MATHIS in MATHIS's vehicle, a red or maroon Dodge Charger, which was parked in the parking lot of the store. MATHIS provided UC #1 with one quarter-pound of marijuana. UC #1 paid MATHIS $300.00. During the meeting, UC #1 stated that he doesn't touch "white," (meaning cocaine) because "that shit will get you time." During the meeting, UC #1 asked if he could get a

"whole" (meaning one pound) of marijuana, and MATHIS indicated that he could provide that amount. The meeting was recorded with audio.

12. On June 7, 2013, UC #1, acting in an undercover capacity, traveled to MATHIS's apartment in Lithonia, Georgia, to purchase $1,000.00 worth of marijuana from MATHIS. After UC #1 arrived at MATHIS's apartment complex, UC #1 was instructed by MATHIS during a cellular telephone conversation to travel to a specific building, where MATHIS would be waiting for UC #1. Once UC #1 arrived at the building, UC #1 observed MATHIS sitting in his vehicle, the same red or maroon Dodge Charger identified in paragraph 9, above. Once UC #1 arrived, MATHIS exited his vehicle, and both MATHIS and UC #1 walked up stairs to the third floor of the building. This meeting was video recorded by law enforcement agents who were outside of the apartment building. UC #1 also audio recorded the meeting. During this meeting, MATHIS told UC #1 that he is a police officer.

13. Once MATHIS and UC #1 arrived on the third floor, MATHIS retrieved a key and unlocked the entrance door to MATHIS's apartment, which was the same apartment where the CS originally saw quantities of marijuana in April, 2013. MATHIS then removed a large clear Ziploc plastic bag from his person and handed it to UC #1. Inside the plastic bag was a green substance, which UC #1 believed was marijuana. MATHIS then walked into the kitchen area and retrieved a medium-size digital scale and a dark grocery bag, both of which were placed on the dinner table located in the dining room area. MATHIS activated the scale, at which time UC #1 placed the plastic bag containing the green substance on the scale. The bag containing the green substance weighed approximately one pound. The plastic bag containing the green substance was then

placed inside the dark-colored grocery bag. UC #1 then gave MATHIS $1,000.00 in United States currency. MATHIS and UC #1 exited the apartment and walked back outside to where the vehicles were parked. UC #1 placed the plastic bag containing the green budded substance believed to be marijuana inside the trunk of UC #1's vehicle. UC #1 then had a brief conversation with MATHIS before leaving the apartment complex. UC #1 then traveled to a pre-arranged meeting location to meet with your affiant and other FBI agents, where UC #1 provided the suspected marijuana to agents for further testing and analysis. During this meeting, MATHIS's NCSO patrol car was parked in front of the apartment building. During that conversation, Mathis tells UC #1 "I do my little 10 or 15 a week," which UC #1 understood to mean that MATHIS was selling 10 to 15 pounds of marijuana a week.

14. On August 8, 2013, UC #1, acting in an undercover capacity, again traveled to MATHIS's apartment in Lithonia, Georgia, and purchased approximately one pound of marijuana from MATHIS for $1,000.00. Once UC #1 purchased the marijuana from MATHIS, UC #1 placed the purchased marijuana in the trunk of UC #1's vehicle. UC #1 and MATHIS were then planning to travel to a restaurant in East Point, Georgia, to meet with another undercover FBI agent ("UC #2). UC #1 told MATHIS that UC #2 was UC #1's cocaine supplier and a potential marijuana purchaser for MATHIS. Prior to leaving MATHIS's apartment to meet with UC #2, MATHIS stated that he wanted to grab his badge and gun, "just in case." When UC #1 and MATHIS left the apartment, UC #1 observed MATHIS carrying a side holster containing a dark-colored firearm. MATHIS and UC #1 traveled to East Point, Georgia, in UC #1's vehicle, which also contained the marijuana that MATHIS had just sold to UC #1.

5

15. On August 8, 2013, at a restaurant in East Point, Georgia, UC #1 and UC #2 met with MATHIS to discuss MATHIS possibly supplying marijuana to UC #2. Prior to entering the restaurant, while in the parking lot, MATHIS wanted UC #1 to show UC #2 the marijuana MATHIS had just sold to UC #1. UC #1 showed UC #2 the marijuana that was hidden inside of UC #1's vehicle.

16. During the meeting with UC #1 and UC #2, MATHIS told UC #2 that he is a police officer, and showed UC #2 his Deputy Sheriff badge. After seeing UC #2's reaction to the badge, MATHIS stated, "Don't worry, I'm on your side." Later in the conversation, MATHIS told UC #2 that he could supply any amount of marijuana that UC #2 requested. MATHIS also agreed to transport marijuana or cocaine from Alabama to North Carolina for UC #2. Both meetings on August 8, 2013, were consensually monitored and recorded with audio.

17. All drug evidence and monitoring devices were turned over to your affiant for further testing and analysis. The drug evidence has been submitted to a laboratory for further testing and analysis, although no results have yet been received. However, I have examined the drug evidence, and based on my training and experience, I believe the substance is marijuana, a Schedule I controlled substance.

**Conclusion**

18. Based upon the evidence and the facts set forth in this affidavit, there is probable cause to believe that on or about August 8, 2013, in the Northern District of Georgia, DARRELL MATHIS committed violations of federal law, namely, Possession with Intent to Distribute and Distribution of Marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(D), and Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c).